[The State, ex rel.] Streitfeld, *v.* White et al.

[Cite as State, ex rel. Streitfeld, v. White (1972), 33 Ohio App. 2d 47.]

(No. 72AP-184—Decided November 7, 1972.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman,* for relator.

*Mr. William J. Brown,* attorney general, and *Mr. John T. Conroy,* for respondents.

REILLY, J. This is a mandamus action whereby relator, in his complaint, prays "that a writ of mandamus issue to the respondents directing them to compensate relator for the period of time he has been illegally deprived of his state employment in the amount of $5,834.50 for the months of March, April, and May, 1972, and for such other and further relief to which relator may be entitled." Respondents move for a summary judgment or a dismissal of the case.

The parties stipulate the following facts:

"1. Franklin H. Streitfeld, relator, was employed by the Bureau of Vocational Rehabilitation and classified as a Public Health Physician II.

"2. On February 25, 1972, Denver L. White gave relator a removal order, effective February 28, 1972.

"3. Relator appealed the removal order to the State Personnel Board of Review and on May 10, 1972, that Board issued an order disaffirming the order of removal, which order is attached hereto and made a part hereof.

"4. After February 25, 1972, relator did not return to work at the Bureau of Vocational Rehabilitation at any time.

"5. Relator was paid through March 10, 1972.

"6. The documents which are marked Exhibits A and B attached to the answer of respondent, were signed by the relator on the dates marked on the exhibits.

"7. The relator, from the date of his termination on February 28, 1972, through August 3, 1972, had no other employment, although he made efforts to obtain other employment with various state agencies, and other private and governmental units.

"8. Relator was ready and willing to go back to work as a Public Health Physician II with the Bureau of Vocational Rehabilitation at all times after February 28, 1972."

The state personnel board of review's order, in pertinent part, reads as follows:

"We should first point out that while this removal proceeding was brought under Section 143.27 of the Revised Code, it was brought on the 33rd day of the appel-

lant's probationary period. Sich [sic] a removal is authorized by Section 143.20 of the Revised Code. It has been a long-standing policy of this Board that when an employee in the classified civil service is removed during the first half of his probationary period, the grounds alleged for removal must be extremely substantial, for the sole and simple reason that a probationary employee, being new, would not be expected to be as efficient as employees with longer service or might not yet be fully familiar with his duties and rules and regulations relating thereto

"In the instant case, the grounds for removal alleged were, *if proven,* sufficiently substantial to justify removal. The burden of proof required of the appointing authority in a removal proceeding is by a preponderance of the evidence—and that evidence must be substantial, reliable, and probative. The proof of the specifications offered by the appointing authority here fell far short of meeting that burden. It was obvious that the major factor in the failure to meet this burden was the fact that one of appointing authority's key witnesses did not testify as expected, but testified almost contrary to the allegations of the removal order. Aside from the change from the expected testimony itself, however, there was no indication to the Board that such testimony was anything but voluntary and truthful.

"The Board therefore has no alternative but to disaffirm the removal order. In doing so, the Board points out that the record is abundantly clear that subsequent to actual receipt of the removal order, the appellant submitted his resignation from his position, effective some two weeks later. Since he had already been served with his copy of the removal order, this action cannot be construed as an attempt to avert a removal. Neither can it be considered as an involuntary resignation which might again invoke the jurisdiction of this Board.

"It is therefore ordered and adjudged that the removal order should be, and the same hereby is, disaffirmed, and the appellant is hereby reinstated to his position as of the date and time he was served his copy of the removal order."

We note paragraphs three, four, and five in the syllabus of *State, ex rel. Staley,* v. *City of Lakewood* (1934), 47 Ohio App. 519, also cited by the Common Pleas Court of this district in *State, ex rel. Reeder,* v. *Municipal Civil Service Commission of Columbus* (1958), 165 N. E. 2d 490, at page 500:

"3. To constitute complete and operative resignation of public officer, there must be intention to relinquish part of term, accompanied by act of relinquishment.

"4. Officer's written resignation, delivered to board or officer authorized to receive it, is *prima facie,* but not conclusive, evidence of his intention to relinquish office.

"5. Officer's resignation to take effect in future may be withdrawn before effective date thereof even against will of body which has accepted it."

Further, the Supreme Court wrote as follows in *Williams, Dir. of Department of Public Safety,* v. *State, ex rel. Gribben* (1933), 127 Ohio St. 398, at page 400:

"If, then, the relators did not voluntarily relinquish their respective positions, but on the contrary were either wrongfully persuaded to tender their resignations, or were induced to do so upon certain terms and conditions relative to retention or succession specified by the director, or his authorized representative, by whose acts he is bound, who then failed to comply with those terms and conditions, and attempted to make such resignations effective contrary to the representation upon which they were obtained, as found by the Court of Common Pleas and the Court of Appeals, it follows that relators were wrongfully removed from their respective positions and are entitled to reinstatement; which right may be enforced by mandamus."

The record shows that relator initially resigned February 15th, effective February 25th, apparently without threat of removal, but there were difficulties with his supervisor. This was treated by the parties as a withdrawal and, consequently, was ineffective. Later, February 25th, he offered to resign effective March 10th. This offer was rejected by the appointive authority by proceeding with removal. It was withdrawn by relator when he appealed. In

any event, the personnel board of review found the February 15th resignation not effective, because it ordered relator reinstated.

In sum, we find that where, in connection with a threat of removal, either before or after a notification of a removal order is received, an employee offers to resign at a subsequent date, but the employer proceeds with the removal and the employee appeals with the result that an order is rendered after the effective date of resignation finding the removal invalid, such action indicates a rejection of the resignation by the employer and a withdrawal by the employee. In other words the resignation never becomes effective.

The state personnel board of review ordered disaffirmance of the removal order and relator's reinstatement to his position "as of the date and time he was served his copy of the removal order." The order is not explicit as to the amount of compensation due relator. This court, however, has spoken on several occasions concerning that issue. Note *State, ex rel. Croft,* v. *Janis,* Court of Appeals for Franklin County, Case No. 9256, decided September 16, 1969; *Hardin* v. *Johnson* (1971), 30 Ohio App. 2d 19; *Price* v. *Richley, Director of Highways,* Court of Appeals for Franklin County, Case No. 72AP-93, decided June 27, 1972. The syllabus in *Hardin* includes the basic rules as follows:

"1. Where a state employee, improperly dismissed, is by court order restored to her former position, she is entitled to be compensated for wages lost by reason of the improper dismissal, less deduction for the amount earned in other employment during the dismissal period, and to be credited with her previously accumulated sick leave.

"2. In such case, where the amount due for lost wages and the previously accumulated sick leave are calculable, there is a clear legal duty to pay the amount due and to record the appropriate sick-leave credit, which is enforceable by mandamus."

For the foregoing reasons, a writ of mandamus shall

issue as indicated herein, and respondents' motion for summary judgment, or dismissal, is overruled.

*Writ allowed.*

TROOP, P. J., and WHITESIDE, J., concur.